**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-3695

AMMAR NAJI, an individual

Plaintiff,

v.

THE COLORADO COLLEGE,

Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Ammar Naji ("Plaintiff" or "Dr. Naji"), by and through undersigned counsel, Van Hall Employment Law, submits this Complaint and Jury Demand against Colorado College ("Defendant") as follows:

## NATURE OF THE ACTION

1. This is an action for unlawful race, color, national origin, and religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, race discrimination and retaliation under 42 U.S.C. § 1981, as well as unlawful retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

## PARTIES, JURISDICTION, AND VENUE

2. Ammar Naji is a Colorado resident who worked for Colorado College as an Assistant Professor of Comparative Literature from 2015 until his termination on May 15, 2025.

3. At all times relevant to this complaint, Dr. Naji was an "employee" of Colorado College that was eligible for the protections of Title VII and FMLA, as more specifically alleged in this Complaint. *See* 42 U.S.C. § 2000e(f); 29 U.S.C. § 2611(2)(A).

4. Colorado College is a private liberal arts college established under the laws of Colorado, with a principal address of 14 East Cache La Poudre St., Colorado Springs, CO, 80903. At all relevant times, Colorado College was an "employer" subject to the requirements and prohibitions of Title VII and FMLA. *See* 42 U.S.C. § 2611(4)(A); 42 U.S.C. §§ 2000e(b).

5. Jurisdiction is proper in this Court because it is located in the District of Colorado and the events giving rise to the claims asserted herein occurred within the District of Colorado.

6. Likewise, venue is proper in this Court because the events giving rise to the claims asserted herein occurred within the District of Colorado.

7. This Court has original jurisdiction of Dr. Naji's Title VII, section 1981, and FMLA claims pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1988, and 29 U.S.C. § 2617(a)(2), respectively.

## ADMINISTRATIVE EXHAUSTION

8. On July 1, 2025, Dr. Naji filed EEOC Charge 541-2025-00056 for unlawful race, color, and religion discrimination and retaliation against Colorado College.

9. On June 18, 2026, the EEOC issued Dr. Naji a Notice of Right to Sue Letter regarding his claims against Colorado College.

## STATEMENT OF FACTS

10. Dr. Naji is a Black Muslim man of Yemeni national origin.

11. In 2015, Dr. Naji began teaching at Colorado College as a tenure-track Assistant Professor of Comparative Literature and Arabic.

12. Soon after his hire, Dr. Naji experienced multiple instances of discrimination by his colleagues because he was a Black, Muslim, Yemeni man and the only faculty with those identities in his department.

13. In 2019, external reviewers noted that Colorado College was not enabling Dr. Naji to "teach the material in which he was trained and has scholarly interests" and was isolating him from the rest of the Comparative Literature Department, stating "it is symbolic of Prof. Naji's isolated status that his office is located in a dark room in the basement, away from other language teachers and the CL faculty."

14. In 2019, Department Chair Corinne Scheiner pressured Dr. Naji to write a self-critical plan by threatening to use her position as chair to negatively affect his tenure or terminate him if he did not comply.

15. Ms. Scheiner also attempted to exclude Dr. Naji from Department events on the basis of his religion, saying "you don't have to worry about this, you don't drink." As a practicing Muslim, Dr. Naji does not drink alcoholic beverages.

16. In 2020, Ms. Scheiner denied Dr. Naji's request for teaching materials during the COVID-19 pandemic, despite approving similar requests from white faculty.

17. Ms. Scheiner also ignored Dr. Naji's requests to address the mold problem in his office.

18. Dr. Naji reported these incidents of discrimination to the Title IX Coordinator at

Colorado College on September 13, 2022.

19. After filing the discrimination complaints, Dean of Faculty Emily Chan offered Dr. Naji money to leave the college, which Dr. Naji refused.

20. In June of 2022, Dr. Naji had an annual review discussion with Professor Jane Murphy. During this review discussion, Dr. Naji was given various goals to strive for, such as timely responding to students and colleagues, consistency in daily meeting times and syllabus, and providing timely feedback to students. The review stated the goals would be revisited in the following annual review.

21. On September 22, 2022, Dr. Naji applied for and was approved to take FMLA leave to care for his sick father in Yemen until December 21, 2022.

22. While Dr. Naji was on FMLA leave, Dean Chan sent multiple harassing emails asking when Dr. Naji would return, even though that information was available to her on Dr. Naji's FMLA paperwork.

23. When Dr. Naji did not respond, Dean Chan cancelled Dr. Naji's 2023-24 teaching schedule and put him on unpaid leave for the 2023-24 academic year.

24. In June 2023, Dr. Naji filed a formal discrimination complaint against Dean Chan with the President of Colorado College, Song Richardson.

25. While Dr. Naji was on leave, then-Associate Vice President of Human Resources Laurie Mozingo contacted Dr. Naji and again offered him a severance package if he were willing to leave the College. Dr. Naji again refused.

26. In June 2024, Dr. Naji received a letter from President Richardson commending him for his contributions to Colorado College and giving him a merit increase to his salary.

27. When Dr. Naji returned to Colorado College in August 2024 following his leave of absence, Dr. Naji's office was moved to a science building and his computer had been wiped of all data and reset. When Dr. Naji asked why his computer's contents were deleted, he received an email response from an individual in the IT department stating, "I was told you were no longer at the College."

28. In August 2024, Dr. Naji informed Dean Chan of his intent to file complaints with the EEOC and OSHA.

29. On September 27, 2024, Dr. Murphy sent an email to Dr. Naji stating, "you'll recall over the summer of 2022, Dean Chan encouraged us to work together on a performance improvement plan."

30. Dr. Murphy had never previously mentioned a performance improvement plan ("PIP") in her annual review meeting with Dr. Naji in June 2022. Dr. Murphy's notes from that meeting contain no mention of a PIP.

31. Dr. Naji had never received a PIP. Nor did Dr. Naji ever receive any other form of formal discipline, corrective action, or counseling for job performance concerns. In fact, Dr. Naji had just received a merit increase for his contributions to Colorado College.

32. On November 5, 2024, Dr. Naji was presented with a PIP. The PIP mischaracterized the 2022 self-review goals and as performance issues.

33. The PIP was fabricated because it mischaracterized Dr. Naji's 2022 self-review goals as performance deficiencies, even though there had been no follow up discussions about these goals since Dr. Naji's leave. Specifically, the college recharacterized the document Dr. Murphy titled "Annual Review Discussion" in June 2022 as a "Performance Improvement Plan"

in order to use it as grounds for termination.

34. On December 3, 2024, Dean Chan provided Dr. Naji with a termination letter stating he failed to satisfactorily fulfill the terms of his PIP, his contract was not being renewed for another semester, and May 14, 2025 would be his last day of employment.

35. The termination letter alleged that Dr. Naji had received a PIP on November 5, 2024 that had been in progress since he met with Dr. Murphy in June 2022 to discuss performance goals.

36. As alleged above, the termination letter was fabricated and was merely pretext to unlawfully terminate Dr. Naji because of his race, color, national origin, and religious discrimination and in retaliation for complaining about discrimination and going on FMLA leave.

**FIRST CLAIM FOR RELIEF: TITLE VII RACE DISCRIMINATION**

37. Dr. Naji incorporates all allegations in paragraphs 1-36 above as if fully set forth herein.

38. To prove race discrimination under Title VII, Dr. Naji must prove 1) he was a member of a protected class; 2) he was qualified and satisfactorily performing his job; and 3) he was terminated under circumstances giving rise to an inference of discrimination. See *McGowan v. Bd. of Trustees for Metro. State Univ. of Denver*, 114 F. Supp. 3d 1129, 1137 (D. Colo. 2015), *aff'd*, 645 F. App'x 667 (10th Cir. 2016).

39. Discrimination can be proven by showing Dr. Naji was treated less favorably than other similarly situated employees. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

40. Dr. Naji belongs to a protected class as a Black man.

41. At all relevant times, Dr. Naji was qualified for his position as Associate Professor and satisfactorily performed his job duties.

42. During Dr. Naji's employment with Colorado College, Colorado College engaged in unlawful discriminatory employment practices against him with respect to the terms and conditions of his employment based on his race.

43. Colorado College engaged in discriminatory employment practices when it cancelled Dr. Naji's 2023-24 class schedule and terminated his position as Assistant Professor because of his alleged failure to respond to a PIP.

44. Upon information and belief, the PIP was fabricated as a pretext for terminating Dr. Naji's employment.

45. Upon information and belief, no white Comparative Literature professor at Colorado College has been subjected to a fabricated PIP and subsequently terminated.

46. Dr. Naji would not have been presented with a fabricated PIP or terminated had he been white.

47. Colorado College's treatment of Dr. Naji was discriminatory because it failed to treat him in the same manner as similarly situated white professors.

48. The effect of these practices deprived Dr. Naji of equal employment opportunities and otherwise adversely affected his employment status because of race.

49. These unlawful employment practices were intentional.

50. As a direct and proximate result of Colorado College's actions, Dr. Naji has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of

life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF: TITLE VII COLOR DISCRIMINATION

51. Dr. Naji incorporates all allegations in paragraphs 1-36 above as if fully set forth herein.

52. Dr. Naji belongs to a protected class as a person of color.

53. At all relevant times, Dr. Naji was qualified for his position as Associate Professor and satisfactorily performed his job duties.

54. During Dr. Naji's employment with Colorado College, Colorado College engaged in unlawful discriminatory employment practices against him with respect to the terms and conditions of his employment based on his color.

55. Colorado College engaged in discriminatory employment practices when it cancelled Dr. Naji's 2023-24 class schedule and terminated his position as Assistant Professor because of his alleged failure to respond to a PIP.

56. Upon information and belief, the PIP was fabricated as a pretext for terminating Dr. Naji's employment.

57. Upon information and belief, no white Comparative Literature professor at Colorado College has been subjected to a fabricated PIP and subsequently terminated.

58. Dr. Naji would not have been presented with a fabricated PIP or terminated had he been white.

59. Colorado College's treatment of Dr. Naji was discriminatory because it failed to treat him in the same manner as similarly situated white professors.

60. The effect of these practices deprived Dr. Naji of equal employment opportunities and otherwise adversely affected his employment status because of color.

61. These unlawful employment practices were intentional.

62. As a direct and proximate result of Colorado College's actions, Dr. Naji has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## THIRD CLAIM FOR RELIEF: TITLE VII NATIONAL ORIGIN DISCRIMINATION

63. Dr. Naji incorporates all allegations in paragraphs 1-36 above as if fully set forth herein.

64. Dr. Naji belongs to a protected class as a person of Yemeni national origin.

65. At all relevant times, Dr. Naji was qualified for his position as Associate Professor and satisfactorily performed his job duties.

66. During Dr. Naji's employment with Colorado College, Colorado College engaged in unlawful discriminatory employment practices against him with respect to the terms and conditions of his employment based on his national origin.

67. Colorado College engaged in discriminatory employment practices when it cancelled Dr. Naji's 2023-24 class schedule and terminated his position as Assistant Professor because of his alleged failure to respond to a PIP.

68. Upon information and belief, the PIP was fabricated as a pretext for terminating Dr. Naji's employment.

69. Upon information and belief, no non-Yemeni Comparative Literature professor at Colorado College has been subjected to a fabricated PIP and subsequently terminated.

70. Dr. Naji would not have been presented with a fabricated PIP or terminated had he not been Yemeni.

71. Colorado College's treatment of Dr. Naji was discriminatory because it failed to treat him in the same manner as similarly situated non-Yemeni professors.

72. The effect of these practices deprived Dr. Naji of equal employment opportunities and otherwise adversely affected his employment status because of national origin.

73. These unlawful employment practices were intentional.

74. As a direct and proximate result of Colorado College's actions, Dr. Naji has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**FOURTH CLAIM FOR RELIEF: TITLE VII RELIGION DISCRIMINATION**

75. Dr. Naji incorporates all allegations in paragraphs 1-36 above as if fully set forth herein.

76. Dr. Naji belongs to a protected class as a Muslim man.

77. At all relevant times, Dr. Naji was qualified for his position as Associate Professor and satisfactorily performed his job duties.

78. During Dr. Naji's employment with Colorado College, Colorado College engaged in unlawful discriminatory employment practices against him with respect to the terms and conditions of his employment based on his religion.

79. Colorado College engaged in discriminatory employment practices when it cancelled Dr. Naji's 2023-24 class schedule and terminated his position as Assistant Professor because of his alleged failure to respond to a PIP.

80. Upon information and belief, the PIP was fabricated as a pretext for terminating Dr. Naji's employment.

81. Upon information and belief, no non-Muslim Comparative Literature professor at Colorado College has been subjected to a fabricated PIP and subsequently terminated.

82. Dr. Naji would not have been presented with a fabricated PIP or terminated had he not been Muslim.

83. Colorado College's treatment of Dr. Naji was discriminatory because it failed to treat him in the same manner as similarly situated non-Muslim professors.

84. The effect of these practices deprived Dr. Naji of equal employment opportunities and otherwise adversely affected his employment status because of religion.

85. These unlawful employment practices were intentional.

86. As a direct and proximate result of Colorado College's actions, Dr. Naji has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**FIFTH CLAIM FOR RELIEF: TITLE VII RETALIATION**

87. Dr. Naji incorporates all allegations in paragraphs 1-36 above, as if fully set forth herein.

88. Dr. Naji had a good faith belief that Colorado College was engaged in

discriminatory and retaliatory conduct in violation of Title VII.

89. Dr. Naji engaged in protected opposition to Colorado College's unlawful employment practices by reporting discrimination by Corinne Scheiner to the Title IX Coordinator at Colorado College, filing a formal discrimination complaint with President Song Richardson and the Civil Rights Coordinator at Colorado College, and complaining about discrimination against him to Dean Emily Chan.

90. In retaliation for Dr. Naji's opposition to what he reasonably believed to be Colorado College's unlawful discrimination and retaliation against him, Colorado College engaged in unlawful retaliatory employment practices.

91. The unlawful employment practices include, without limitation, the unwarranted cancellation of Dr. Naji's 2023-24 class schedule and termination because of Dr. Naji's engagement in protected activity.

92. These unlawful employment practices were intentional.

93. As a direct and proximate result of Colorado College's actions, Dr. Naji has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**SIXTH CLAIM FOR RELIEF: 42 U.S.C. § 1981 RACE DISCRIMINATION**

94. Dr. Naji incorporates all allegations in paragraphs 1-36 above, as if fully set forth herein.

95. The offer letter and faculty appointment renewal letters were contracts between Dr. Naji and Colorado College.

96. During Dr. Naji's employment with Colorado College, Colorado College engaged in unlawful discriminatory employment practices against him with respect to the terms and conditions of his employment based on his race.

97. The unlawful employment practices included, without limitation, disparate treatment, cancellation of Dr. Naji's 2023-24 teaching schedule, and termination because of Dr. Naji's race.

98. These unlawful employment practices infringed upon Dr. Naji's enjoyment of all benefits, privileges, terms, and conditions of his contractual relationship with Colorado College.

99. The effect of these practices deprived Dr. Naji of equal employment opportunities and otherwise adversely affected his employment status because of race.

100. These unlawful employment practices were intentional.

101. Colorado College engaged in these unlawful employment practices with malice or with reckless indifference to Dr. Naji's federally protected rights.

102. As a proximate result of Colorado College's actions, Dr. Naji has suffered and continues to suffer a loss of wages and benefits, loss of job, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

**SEVENTH CLAIM FOR RELIEF: 42 U.S.C. § 1981 RACE RETALIATION**

103. Dr. Naji incorporates all allegations in paragraphs 1-36 above, as if fully set forth herein.

104. The offer letter and faculty appointment renewal letters were contracts between Dr. Naji and Colorado College.

105. Dr. Naji had a good faith belief that Colorado College was engaged in

discriminatory and retaliatory conduct in violation of section 1981.

106. Dr. Naji engaged in protected opposition to Colorado College's unlawful employment practices by reporting discrimination by Corinne Scheiner to the Title IX Coordinator at Colorado College, filing a formal discrimination complaint with President Song Richardson and the Civil Rights Coordinator at Colorado College, and complaining about discrimination against him to Dean Emily Chan.

107. In retaliation for Dr. Naji's opposition to what he reasonably believed to be Colorado College's unlawful discrimination and retaliation against him, Colorado College engaged in unlawful retaliatory employment practices.

108. The unlawful employment practices include, without limitation, disparate treatment, cancellation of Dr. Naji's 2023-24 teaching schedule, and termination because of Dr. Naji's engagement in protected activity.

109. The unlawful retaliation to which Dr. Naji was subjected infringed upon his ability to make, perform, modify, and/or terminate his contractual employment relationship with Colorado College, and infringed upon his enjoyment of all benefits, terms and conditions of their employment relationship.

110. These unlawful employment practices were intentional.

111. Colorado College engaged in these unlawful employment practices with malice or with reckless indifference to Dr. Naji's federally protected rights.

112. As a proximate result of Colorado College's actions, Dr. Naji has suffered and continues to suffer a loss of wages and benefits, loss of job, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

**EIGHTH CLAIM FOR RELIEF: FMLA RETALIATION**

113. Dr. Naji incorporates all allegations in paragraphs 1-36 above, as if fully set forth herein.

114. Dr. Naji engaged in protected activity when he requested FMLA leave to care for his father's serious medical condition and then used FMLA leave for twelve weeks starting on September 22, 2022.

115. Colorado College retaliated against Dr. Naji for exercising his FMLA rights including, but not limited to, reprimanding Dr. Naji for not answering emails while on FMLA leave, cancelling Dr. Naji's 2023-24 teaching schedule due to his alleged unresponsiveness while on FMLA leave, and ultimately terminating Dr. Naji's employment.

116. Colorado College's actions described above were causally related and motivated by Dr. Naji's request for FMLA leave and use of FMLA leave.

117. Because of Colorado College's unlawful actions, Dr. Naji has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

118. Colorado College's actions, through its employees, were in bad faith or willfully violated the law and so Dr. Naji is entitled to liquidated damages.

**PRAYER FOR RELIEF**

For the reasons set forth above, judgment should be entered for Dr. Naji and against Colorado College, and Dr. Naji should be awarded:

1. That this Court assume jurisdiction;

2. That this Court enter judgment in Plaintiff's favor and against Defendant;

3. That this Court declare the actions of the Defendant described in this Complaint and Jury Demand to be in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Family and Medical Leave Act;

4. That this Court award Plaintiff all appropriate relief at law and equity, including but not limited to back pay and benefits, front pay, a gross-up adjustment for taxes and any subrogation interests and all other make whole relief, including all available consequential/compensatory damages;

5. That this Court grant compensatory and consequential damages against the Defendant, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against the Defendant, as allowed by law;

6. That this Court award Plaintiff his attorney fees and costs of this action, including expert witness fees, on all claims allowed by law;

7. That this Court award pre-judgment and post-judgment interest at the highest lawful rate; and

8. That this Court award such additional or alternative relief as may be just, proper and equitable.

**JURY TRIAL DEMAND**

Dr. Naji respectfully demands a trial by jury on all issues so triable.

Respectfully submitted this 13th day of August, 2026 by:

VAN HALL EMPLOYMENT LAW

*/s/Michelle McEwen*
Michelle McEwen, #60719
mmcewen@vhemploymentlaw.com (970) 235-0188
*/s/Christopher Van Hall*
Christopher Van Hall, #50660
cvanhall@vhemploymentlaw.com (970) 235-0198
Van Hall Employment Law
242 Linden Street
Fort Collins, CO, 80524
***Attorneys for Dr. Ammar Naji***